IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| L & L SALES, INC., d/b/a LLT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. CV 02-B-1787-NW |
| | ) |
| TRUCK CENTERS, INC.; | ) |
| FREIGHTLINER CORPORATION, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

This case is presently pending before the court on defendant's Motion for Summary Judgment. (Doc. 23.)[1] Plaintiff L & L Sales has sued defendants Truck Centers, Inc. and Freightliner Corporation, alleging various claims related to plaintiff's purchase of a truck, which was manufactured by defendant Freightliner, from defendant Truck Centers. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 23), is due to be granted.

**I. SUMMARY JUDGMENT STANDARD**

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the

---

[1]Reference to a document by number, "(Doc. #)", refers to the number assigned to each document filed in the court's record.



initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in its favor. *See id.* at 255. Nevertheless, the non-moving party need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. STATEMENT OF FACTS

Plaintiff is a corporation engaged in commercial trucking. (Doc. 20 ¶ 1.) On or about October 24, 2000, plaintiff purchased a 2001 Freightliner Model FL 70 from defendant Truck Centers, an independent dealership. (*Id.* ¶¶ 2, 4.) Defendant Freightliner manufactured and

warranted the truck. (*Id.* ¶ 3.) Truck Centers incorporated Freightliner's warranty into its sales agreement with plaintiff. (Doc. 24, Ex. 1 at 4.)

Freightliner's warranty was a limited warranty. (Doc. 24, Ex. 8, ex. C at 227.) The warranty provided that Freightliner would repair or replace defective parts or components for a period of three years or 250,000 miles. (*Id.*, ex. B; Ex. 3 exs. 108, 109.) Freightliner's sole obligation under the warranty was to repair or replace defective parts or components of the truck. (*Id.*, Ex. 8, ex. C at 227.) The warranty explicitly disclaimed any implied warranties, and expressly excluded any claims for special or consequential damages. (*Id.* at 227-28.) The warranty stated: "In no event shall Freightliner LLC be liable for special or consequential damages including, but not limited to, injuries to persons or damage to property, loss of profits or anticipated profits, or loss of vehicle use." (*Id.* at 228.)

The warranty provided a procedure for seeking covered repairs stating:

> Purchaser must notify Freightliner LLC, within the applicable warranty period, of any failure of the vehicle to comply with this limited warranty[,] and Purchaser must, at Purchaser's expense, promptly return the vehicle, component or part to an authorized dealer for inspection of any defect in material or workmanship occurring within the applicable time or distance limits.

(*Id.* at 227.)

After putting the truck into service, plaintiff operated the truck for 25,000 to 30,000 miles without experiencing any problems. (Doc. 24, Ex. 3 at 34-35.) Thereafter, plaintiff began having trouble with the truck. From October 2000 until December 2001, plaintiff presented the truck for repairs, including oil leaks, loss of engine power, and a white smoke

3

emission, numerous times. (Doc. 24, Ex. 8, ex. A 108-10.) As of December 15, 2001, time, plaintiff had driven the truck for 149,489 miles. (*Id*. at 108.)

In response to plaintiff's continuing problem with the white smoke emission, Freightliner replaced the engine in the truck. (*Id*. at 124; doc. 26, Ex. A at 244.) In December 2001, Randy Smith, Freightliner's Fleet Service Manager, ordered a new engine to be delivered and installed through Barloworld Freightliner in Memphis, Tennessee. (Doc. 24, Ex. 8 ¶ 4.) Barloworld installed the replacement engine, which it received from Detroit Diesel. (Doc. 24, Ex. 2 at 8) After the engine was replaced, Freightliner prepared a Warranty Inspection Report, which stated:

> The engine was removed for an incurable white smoke complaint. It is unlikely that the problem with the turbo contributed to this issue. Use of the turbo exhaust brake appears to cause back pressure inside of the turbo and carries through into the engine crankcase via the turbo oil return line. It [is] also apparent that the dealer who performed the repair to the crankcase vent screens or another servicing dealer did not reassemble the control diaphragm correctly. This caused continuous venting of the crankcase through the air pressure balance hole. The leak coupled with excessive back pressure caused oil to accumulate on the engine and vehicle.

(Doc. 26, Ex. A at 244.)[2]

After the engine was replaced, plaintiff operated drove the truck for another 50,000 to 60,000 miles. (Doc. 24, Ex. 5 at 29.) During this period, plaintiff continued to have trouble with oil leaks and engine deceleration. (*Id*. at 27-29.)

---

[2]In May 2001, plaintiff had complaints of oil leaks and oil blow back at the valve cover gasket and the crankcase breathers. (Doc. 24, Ex. 8, ex. A at 135-37.) The problem was repaired by replacing the valve cover gasket and wire filters. (*Id*. at 135.) The engine was cleaned and tested, and no leaks were found. (*Id*.)

Plaintiff contends that Freightliner refused to return its calls after the engine was replaced in December 2001. (Doc. 26 ¶ 4 (citing doc. 24, Ex. 3 at 39-76.) Plaintiff contends that this failure to respond to its complaints prevented it from presenting the truck for repair.

The record contains evidence that plaintiff called Freightliner four times; three of these calls were returned. (Doc. 24, Ex. 3 at 74-75.) The unreturned telephone call concerned the engine "blowing smoke." (*Id.*)

According to the record, plaintiff had two repairs made to the truck after the engine replacement: A shorted power wire was repaired on May 1, 2002, (doc. 24, Ex. 8, ex. A at 111), and a bad alternator was replaced on April 11, 2002, (*id.* at 112).

Plaintiff's counsel sent notice of revocation to Freightliner on June 6, 2002. (Doc. 26, Ex. B.) The truck has not been driven since July 3, 2002. (Doc. 24, Ex. 4, Vol. I at 64.) Plaintiff contends that it "kept the truck as long as it did because of the defendant's repeated attempts to repair the truck and revoked its acceptance of the truck because the problems and defects persisted in the truck and Freightliner terminated its communications with plaintiff thereby depriving plaintiff of an opportunity to present the truck for repairs." (Pl. Br. at 4.) It also contends that "there is no evidence of any substantial change in the condition of the truck which was not caused by the truck's defects." (*Id.*)

## III. DISCUSSION

### A. BREACH OF EXPRESS WARRANTY

Defendants contend that plaintiff's breach of express warranty claim should be dismissed because plaintiff cannot show that Freightliner failed or refused to repair the truck. Specifically, defendants contend that plaintiff, after the engine replacement, never "return[ed] the vehicle . . . to an authorized dealer" for repair of any problem after the engine was replaced.

"A contract limitation of remedies to repair or replacement is allowed under proper circumstances. Such a limitation, however, will not be allowed 'where circumstances cause an exclusive or limited remedy to fail of its essential purpose' . . . ." *Volkswagen of America, Inc. v. Harrell*, 431 So.2d 156, 164 (Ala. 1983)(citing Ala. Code § 7-2-719(2)). "A limitation of remedies to repair or replace goods fails in its essential purpose if the seller does not provide goods which conform to the contract within a reasonable time." *Burbic Contracting Co., Inc. v. Cement Asbestos Products Co.*, 409 So.2d 1, 5 (Ala. 1982), *quoted in Volkswagen of America*, 431 So. 2d at 164. A warranty limited to repair or replacement of goods cannot "fail its essential purpose" unless and until the warrantor has had an opportunity to repair or replace defective parts. *See e.g., Volkswagen of America*, 431 So.2d at 164-65. When the buyer fails to tender an allegedly defective item so that the warrantor can repair it, buyer cannot show warranty failed of its essential purpose. *See Ag-Chem Equipment Co., Inc. v. Limestone Farmers Co-op., Inc.*, 567 So.2d 250, 252-53 (Ala. 1990).

Here plaintiff cannot establish that the warranty failed of its essential purpose because plaintiff did not allow Freightliner to repair defects. The warranty requires plaintiff make the truck available for inspection and repair of the defects. Because plaintiff failed to provide Freightliner with an adequate chance to repair, plaintiff failed to comply with the terms of the warranty and cannot show warranty failed of its essential purpose.

Therefore, defendants' Motion for Summary Judgment as to plaintiff's claim based on its express warranty will be granted and the claim dismissed.

## B. REVOCATION OF ACCEPTANCE

Defendants argue that buyer cannot revoke acceptance after there has been a substantial change in the condition of the goods. Plaintiff contends that the truck was parked and has not been driven since May or July 2002. Counsel for the plaintiff gave notice of revocation on June 6, 2002. It also contends that there has not been a "substantial change in the condition of the goods," except for such changes associated with the alleged defects.

As of April 11, 2002, plaintiff had driven the truck more than 196,000 miles. Defendant contends that this amount of driving constitutes a "substantial change" in the truck as a matter of law. As noted above, plaintiff claims it kept the truck so long because defendant continued to attempt to repair it. Plaintiff further claims it revoked acceptance because problems kept arising and defendant cut off communications with plaintiff, so plaintiff could not present the truck for repairs.

Assuming the plaintiff can demonstrate that it is entitled to revoke,[3] it must further demonstrate that it revoked its acceptance of the truck "within a reasonable time after [it] discover[ed] or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects." Ala. Code § 7-2-608(2). The undisputed evidence in the record demonstrates that plaintiff discovered the alleged defects – oil leak and engine deceleration – no later than December 2001. (Doc. 26 ¶ 5.)[4] After "discovering" the defects plaintiff continued to drive the truck for an additional 50,000 to 60,000 miles. It revoked its acceptance on June 6, 2002, and parked the truck on July 3, 2002.

As set forth in the Statement of Facts, plaintiff has not come forward with evidence that, after December 2001, it presented the truck for repair of the oil leak and/or the engine deceleration problems. Moreover, the record does not demonstrate that Freightliner terminated its communications with plaintiff or that Freightliner took any action that

---

[3] In order to revoke its acceptance, plaintiff is "obligated to show only that the van's nonconformity substantially impaired its value to [plaintiff]." *Page v. Dobbs Mobile Bay, Inc.*, 599 So.2d 38, 42 (1992). In determining whether an alleged defect or nonconformity substantially impairs the value, "[t]he trial court [may consider] the cost and extensiveness of the repairs, the actual use and ability to use the truck, and the success of the repair in [determining if] there [is] substantial impairment of the value of the . . . truck." *Dickson v. U-J Chevrolet Co., Inc.*, 454 So.2d 964, 966 (Ala. 1984). The fact that plaintiff continued to drive the truck almost 200,000 miles before it revoked its acceptance, and it did not seek repairs for the alleged nonconformities during the six months between the time the engine was replaced and the time plaintiff revoked its acceptance indicates that the value of the truck was not "substantially impaired."

[4] The record contains evidence that plaintiff had considered "turning the truck in" as early as December 28, 2001. (Doc. 24, Ex. 8, ex. A at 12.)

8

prevented plaintiff from presenting the truck for repairs. Also, after the engine was replaced, plaintiff put almost 60,000 miles on the truck, and a total of almost 200,000 since the truck was purchased in October 2000.

Considering the delay and the extensive use of the truck from December until July, without any request for service for the alleged defects, the court finds that no reasonable jury could determine that plaintiff's June 2002 revocation was within a reasonable time after plaintiff discovered the alleged defects and before any substantial change in condition of the goods which is not caused by the defects. Ala. Code § 7-2-608(2); *see also Freedman v. Chrysler Corp.*, 564 A.2d 691, 700 (Del. 1989)(revocation not timely as a matter of law when car was driven for 14 months and 15,353 miles); *Ford Motor Co. v. Mellor*, 748 S.W.2d 410, 412 (Mo. App. 1988)("use of the automobile for seventeen months and 22,936 miles, as a matter of law, deprived defendants of the right to [revoke acceptance];" plaintiff had continued to drive car fifteen months after discovering defects and driving "22,936 miles is a 'substantial change in the condition of the goods not caused by their own defects.'")

Therefore, defendants' Motion for Summary Judgment as to plaintiff's revocation claim will be granted, and such claim dismissed.

### C. AEMLD CLAIM; MISREPRESENTATION CLAIMS; BREACH OF IMPLIED WARRANTY CLAIMS

In its Third Amended Complaint, plaintiff alleges claims based on AEMLD, breach of implied warranties, and misrepresentation. (*See* doc. 20.) Defendant has moved for summary judgment as to these claims. (Def. Memorandum in Supp. of Mot. for Summ. J.

9

at 7-9.) Plaintiff has not presented any argument in opposition to defendant's Motion for Summary Judgment as to his claim based on an alleged breach of fiduciary duty. Therefore, the court finds that plaintiff has abandoned these claims. *See Smith v. International Paper Co.*, 160 F. Supp. 2d 1335, 1347 (M.D. Ala. 2001)(citing *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.), *cert. denied* 516 U.S. 817 (1995)). Defendant's Motion for Summary Judgment as to plaintiff's claims based on AEMLD, misrepresentation, and breach of implied warranties are to be granted, and such claims will be dismissed.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendants are entitled to judgment as a matter of law. An order granting defendants' Motion for Summary Judgment will be entered contemporaneously with this Memorandum Opinion.

DONE this 25th day of March, 2004.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge